(No. 12951.—Judgment affirmed.)

CATHERINE PLAMBECK, Defendant in Error, *vs.* THE CHICAGO RAILWAYS COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 23, 1920.*

1. NEGLIGENCE—*witness may be cross-examined as to how many times he has testified for defendant.* In an action against a street railway company by a passenger, the police officer who reported the accident and who is a witness for the defendant may be cross-examined to show how many times he has testified for the defendant but not to show that he has never testified in court for an injured person.

2. TRIAL—*when fact that expert witness has previously testified for defendant may be mentioned in argument.* Where it is shown that an expert witness who testified for the defendant street railway company as to the extent of an injury to a passenger has testified for the defendant in a number of cases, that fact may be mentioned in a reasonable way in the argument of the plaintiff's counsel.

3. SAME—*what is proper argument to explain why plaintiff did not complain of injury.* Where it is proved that the plaintiff, who was injured in a street car accident, apparently suffered no injury at the time but walked some distance afterwards, counsel for the plaintiff, in attempting to explain the circumstance to the jury, may, by calling the jury's attention to a book on the recent war without making any reference to the experiences related therein, refer generally to the fact that persons injured often do not suffer pain at the time they are injured.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

FRANK L. KRIETE, and WILLIAM H. SYMMES, (W. W. GURLEY, J. R. GUILLIAMS, and C. L. MAHONY, of counsel,) for plaintiffs in error.

CHARLES C. SPENCER, and ARTHUR A. HOUSE, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendant in error, Catherine Plambeck, recovered a judgment in the circuit court of Cook county for $4000 against plaintiffs in error, the Chicago Railways Company and the Chicago City Railway Company, for injuries received by her while riding on a street car in the city of Chicago. The judgment was affirmed on appeal to the Appellate Court for the First District on condition that defendant in error file a *remittitur* in that court of $1000 within ten days, which was done. A petition for *certiorari* was granted by this court.

On May 9, 1915, defendant in error was riding on a south-bound Ashland avenue street car which had entered Twelfth street from the north on Paulina street. The car then ran east on the east-bound track on Twelfth street to Ashland avenue, where it turned south into the south-bound Ashland avenue track by means of an electric switch which operated automatically. The car stopped before it reached the switch, and when it started again the front wheels took the switch but the rear wheels for some unaccountable reason continued on the straight track, causing the rear of the car to strike a trolley pole on which the trolley wires were strung, standing about three feet from the switch track. The car came to a stop after it had run from six to eight feet after the rear wheels failed to take the switch. The

window near the rear end of the car and a rear step were broken, and according to the testimony of some of the witnesses the trolley pole was broken also. The seats in the car were filled with passengers when the accident happened. Defendant in error was holding her two-year-old baby on her lap and her oldest daughter was riding on the seat by her side. Her husband and youngest daughter were riding together a few seats ahead in the car. Defendant in error had been pregnant about five or six months. When the car jumped the track it threw her forward against the seat and the baby's head was driven against the window with such force as to cause a severe bruise upon its head. She did not realize at the time that she was injured and made no complaint to the conductor or to the policeman for the city who took the names of the injured to report the same to the city authorities. When she got off the car after the accident she stood on the sidewalk about twenty minutes waiting for another car, which took her and her family to the home of friends on Twenty-second street. The heads of the family they intended visiting not being at home, she washed the faces of herself and baby and then walked with her family about two blocks to the elevated train and after getting off that train walked home about five blocks. After she got home she became nervous and went out of the house and sat on the lawn fence to obtain fresh air. She retired about seven o'clock. At about nine o'clock that night she began to menstruate. The next day she began to suffer pain and in the afternoon called Dr. Loeser, who found that there was a slight trace of blood on vaginal examination. He also found that there was a bruised place on her right side below the abdomen, which showed plainly by the discoloration. On June 1 following the accident she suffered a miscarriage, and has suffered pain and nervousness since that time up to the trial in this case.

The first point argued by plaintiffs in error is that the trial court committed reversible error in permitting police

·officer Finnerty to be cross-examined so as to show that he had testified "in behalf of the street car company" about five or six times previous to this trial and had never been called by an injured person to testify. By this examination it clearly appears that Finnerty by his answers showed that he had testified five or six times for the plaintiff in error whose car had injured the defendant in error and. that he had never been called to testify by any injured person. Under the previous holdings of this court it was proper cross-examination to have the witness testify how many times he had testified for plaintiffs in error or either of them. This was as far as defendant in error was entitled to go with this cross-examination. It was improper cross-examination to elicit from the witness the fact that he had never testified in court for a person injured. ·(*McMahon* v. *Chicago City Railway Co.* 239 Ill. 334.) The latter part of this examination was intended to show, evidently, that the witness' sympathies were with the plaintiffs in error, and the mere fact that he had never testified for any injured person formed no proper basis for drawing an unfavorable conclusion from his testimony. The substance of the testimony of this witness is, that when the accident happened he got aboard the car and saw a lady whose waist was torn and who was injured, and that she ·was the only one on the car who indicated that she was injured; that defendant in error did not answer him that she was injured, and that he asked all on the car if they were injured. This part of his testimony was not controverted except by the testimony of defendant in error that he did not ask her in person if she was injured and that she made him no answer on that subject. Finnerty was contradicted by defendant in error's witnesses, they testifying, in substance, that he said to the conductor that there were a number of others on the car that were injured and inquired of the conductor why he did not get their names. He testified that he made no such statement and no such inquiry. Inasmuch as de-

294 – 20

fendant in error positively stated that she did not know that she was injured until after she had gotten home and was considerably excited owing to the fact that her child was injured, we do not regard the policeman's testimony of any particular significance in this case. It was conceded that he made general inquiries on the car for persons injured, and there is no pretense that defendant in error answered him, one way or the other, as to whether she was or was not injured. The fact that other persons might have been injured has very little or nothing to do with the issues in this case, and while we agree with plaintiffs in error's contention that the court committed technical error in admitting the latter part of the cross-examination complained of, yet we do not regard the error of such a serious nature as to be considered reversible error in this case.

For the same reasons as above given we do not regard it as reversible error that counsel for defendant in error, in his closing argument to the jury, referred to the police officer as a public servant who uniformly came into court and testified in behalf of street car companies and never in favor of injured persons. The testimony of Finnerty was of the character that carried no material weight in the decision of the case, not because of his attitude towards the parties nor upon any supposition that he may not have been truthful, but simply because the facts testified to by him had very little tendency to prove any issue, one way or the other, that was not practically admitted by defendant in error.

Dr. Loeser testified that the miscarriage had been caused by inflammation of the fallopian tubes and that the inflammation had either been caused or increased by the bruise. Dr. Tinney answered a hypothetical question propounded by plaintiffs in error's counsel to the effect that such a bruise, under the conditions detailed by Dr. Loeser, would not have produced miscarriage, in his opinion. In his argument to the jury counsel for defendant in error referred to Dr. Tinney in this language: "I want to say a word about Dr.

Tinney, with his six-foot stature and his handsome Adonis form, testifying in behalf of the street car company. He didn't undertake to say he testified one hundred times, more or less, in the last year. Where there comes a conflict between a man like that and Dr. Loeser,—a plain old family doctor,—his business is to cure sickness. Tinney's business,—a large part of it,—is to testify to defeat the claims of the injured. Where it comes to these two men on a scientific proposition, which are you going to give credence to?" Dr. Tinney had testified that he had testified a number of times for plaintiffs in error. We do not approve of this style of argument. It is of the very cheap sort but likely to have some influence with the jury. There was no evidence in the record that Dr. Loeser was a "plain old family doctor," unless it appeared from his personal appearance and bearing. Outside of this we are unable to say that this argument was improper. It being proper to prove that Dr. Tinney had testified a number of times for plaintiffs in error, reasonable comment thereon must be indulged. In any event, we do not think that reversible error was committed in this argument.

Another trial in this case, as appears from the evidence, could not reasonably be expected to result in a verdict for plaintiffs in error. The only contention they make is that the errors complained of accounted for the excessive verdict that caused a *remittitur* to be entered in this case, and that the verdict should be less than $3000 on another trial. We are of the opinion that this expectation is not well founded and think the judgment ought to be affirmed, as we are bound in that particular by the judgment and finding of the Appellate Court.

We are not disposed to change our views already expressed by reason of defendant in error's counsel's reference to the book, "Over the Top," in his argument. He was referring to the excitement under which defendant in error was laboring at the time of the accident and following it, as

an answer to the other counsel's argument that if she had been injured to the extent she claimed to be she would not have walked the distance she did after the injury. His actual remarks in this regard were these: "She was very much excited at the time,—so much dazed she didn't know how she got off the street car. It has been said that it is a common thing in war for a person to receive serious injury and not know it. . You who have read this wonderful book, 'Over the Top,' know the experiences." He did not undertake to narrate any of the experiences detailed by that book nor to make reference to any of the experiences related therein. We think there was nothing in what he said that seriously violates the rules applicable to arguments to juries and that plaintiffs in error were not prejudiced by such an argument.

. We are influenced somewhat in our conclusion by the further fact that the foregoing argument complained of was in answer to remarks of plaintiffs in error's counsel that were not altogether legitimate and proper. We refer to the following: "Now, this cock-and-bull story, that seems to me to be a dishonest one, of this mother having this little girl tell the same story as hers, that this policeman said to the conductor, 'There are a lot of other people injured in the car; why don't you take their names?' Why should the conductor take any names if he is not going to take them all? Why should the policeman be there? He is not interested in the street car company, notwithstanding the fact that counsel asked him if he ever testified for this company." There is no evidence in the record that defendant in error used any effort to have her daughter tell the story as she had told it, as intimated by this argument.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*