524    APPELLATE COURTS OF ILLINOIS.

People ex rel. Jamontas v. Miller, 245 Ill. App. 524.

## The People of the State of Illinois ex rel. Kazimir Jamontas and Stanley Darguzis, Appellees, v. Paul Miller, Appellant.

### Gen. No. 31,523.

1. CONTEMPT—*how one may be acquitted of.* One adjudged in contempt for violating an order or decree may acquit himself by showing that the same was invalid or a nullity.

2. DEPOSITIONS—*necessity of taking according to statute.* The statutory provisions for the taking of depositions must be substantially complied with and no material departure from the statute can be allowed unless by agreement or waiver of the parties to the suit.

3. DEPOSITIONS—*necessity as precedent to taking.* Under Cahill's St. ch. 51, ¶ 24, providing the manner of taking a deposition in a chancery suit, as "shall be necessary," a deposition cannot be required to be taken of a witness when it does not appear necessary to thus preserve his testimony, and when it appears, on the contrary, that the deposition could have been readily procured before another master in a pending proceeding.

4. CONTEMPT—*as not resulting from refusal to appear for unnecessary deposition.* A contempt order for failing to appear for depositions before a master may be reversed on a showing that the testimony thus sought could have been readily had before another master in a pending proceeding.

Appeal by defendant from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed. Opinion filed October 4, 1927.

KAZIMIR P. GUGIS, P. B. SMITH and HARRY C. KINNE, for appellant.

No appearance for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal by Paul Miller from an order of said circuit court, entered June 22, 1926, finding him guilty of contempt for wilfully refusing to appear and testify before one Miner, a master in chancery, and

People ex rel. Jamontas v. Miller, 245 Ill. App. 524.

fining him $100, and ordering that he be confined in jail "until such time as he shall offer to comply with the court's order, entered May 26, 1926, directing him to appear before said master * * * and bring with him the documents, books and memoranda specified and described in the *subpoena duces tecum* theretofore served upon him." Similar orders were entered against Peter Galskis and Anton Zymont. They perfected separate appeals (Case Nos. 31,526 and 31,529), *post,* and all these appeals have been consolidated for hearing. The same questions are involved in each. No brief has been filed by appellees.

On January 12, 1921, Kazimir Jamontas and Stanley Darguzis filed their bill against Peter Galskis, the Lithuanian News Publishing Company and others, including Miller and Zymont, officers and directors of the company. In February, 1921, the cause was referred to William H. Dellenback, a master in chancery in Chicago, to take proofs and report his conclusions. While the case was pending before him and after many witnesses including Miller, Galskis and Zymont had testified, and about 2,000 pages of testimony had been taken, complainants, on March 23, 1926, filed their second amended and supplemental bill, in which they alleged in substance that the Publishing Company had been organized as an Illinois corporation on April 11, 1914, to engage in the business of publishing, in the Lithuanian language, newspapers, pamphlets, etc., and to carry on a general printing business; that on March 8, 1920, it was authorized to enlarge its business so as to include the buying and selling of steamship tickets, the forwarding of passengers and freight, and the buying and selling of foreign exchange; that Galskis and Zymont and one Joseph Szmotelis are respectively the president, treasurer and secretary of the company and members of its board of trustees, which consists of fifteen persons, including Jamontas and Miller; that on March 8, 1920, the capital stock of

the company (originally of $15,000) was illegally increased to $50,000, 5,000 shares of the par value of $10 per share, of which stock complainant, Jamontas, is the owner of 425 shares, and complainant Darguzis, one share; that defendant directors have conspired to pay to certain of them additional compensation and issue to themselves stock without consideration passing to the company; that it is unlawfully transacting its foreign exchange business; that it has failed to promptly transmit money received by it and its bank account is overdrawn more than $5,000; that it has unlawfully purchased its own stock and executed a trust deed conveying certain of its own estate to a certain named Building & Loan Association; that certain of its officers have misappropriated its profits; that it has never paid a cash dividend, although a stock dividend of 30 per cent was declared in 1920; that its assets are rapidly diminishing; and that complainants have been refused an audit of its books. The bill prayed for an injunction, a receiver, an accounting and the dissolution of the company.

On April 6, 1926, the defendant officers, including Galskis, Zymont and Miller, filed a joint and several answer to the bill in which, after admitting the organization of the company, the personnel of its officers and directors, and the said increase of the capital stock, they denied all other material allegations.

On April 5, 1926, while the cause was pending before Master Dellenback, a written notice was served upon the solicitors for defendants, including Miller, Galskis and Zymont, that on April 15, 1926, at 2 o'clock p. m., complainants would take the depositions of Anton Zymont and others before said Master Miner at his office in Chicago. On that day Miner, as master, issued two subpoenas *duces tecum*. One was directed to Galskis and Miller, and the other to Zymont, commanding each to appear before him at his office on April 22, 1926, at 2 o'clock p. m., and there produce certain

papers or instruments mentioned, and testify "concerning a certain suit, * * * wherein *Kazimir Jamontas, et al.,* are complainants, and *Peter Galskis, et al.,* are defendants." The subpoenas were served but none of the witnesses appeared. On May 26, 1926, on complainants' petition, the court entered an order directing them to appear before Master Miner on June 3, 1926, at 2 o'clock p. m., and "bring with them the documents, books and memoranda specified in said subpoenas." None of them appeared but their solicitor did so and stated that they, acting upon his advice, would not appear.

On June 5, 1926, following the filing by complainants of a petition for a rule upon the three parties (hereinafter referred to as respondents) to show cause why they should not be adjudged in contempt, etc., the court entered such a rule. On June 10, 1926, they filed their verified joint and several answer thereto, in which, after admitting the service of the Miner subpoenas and their refusal to appear, they alleged that on February 8, 1921, the cause had been referred to Master Dellenback and was still pending before him; that about 30 witnesses had been examined and about 65 separate hearings had; that all respondents had testified before him on behalf of defendants and been cross-examined by complainants' counsel; that the last hearing was had on February 14, 1924, when Joseph Szmotelis, a defendant, was cross-examined, but which cross-examination had not been completed; that all respondents reside in Chicago, that none of them is intending to depart from the jurisdiction of the court, and that all are ready and willing to further testify before Master Dellenback, if desired by complainants; that the cause is set for the further taking of testimony before Master Dellenback on June 18, 1926; that, having great respect for the court, etc., they believe the court "has no jurisdiction or power under the law to order and direct them or either of them to appear for

examination before another Master in Chancery, or other officer, while the cause is pending before Master Dellenback and is actually on trial before him''; and that there is no provision in the laws of Illinois authorizing or empowering the court to order and direct·them to appear and testify before Master Miner under the circumstances shown, in that ''it is not necessary to take said depositions,'' etc. They prayed that the rule be discharged.

In the contempt order, fining and committing the respondents to jail, the court found the facts as to the prior proceedings substantially as above outlined, and further found that complainants ''complied with the statute of the State of Illinois in all respects in regard to the taking of the depositions''; that ''the court had jurisdiction to enter the order of May 26, 1926, directing the respondents and each of them to appear before Master in Chancery Miner''; and that the respondents ''have willfully neglected and failed to comply with the lawful orders of this court heretofore entered,'' and are guilty of·wilful contempt.

It is contended by counsel for respondents that, under the provisions of our statutes concerning depositions and under the facts disclosed, the circuit court was without power or authority to issue its order of May 26, 1926, directing respondents to appear before Master Miner and testify and obey the subpoena *duces tecum* issued by him, and that, hence, the contempt orders appealed from are invalid and should be reversed.

After a review of the present record and of said statutes we are of the opinion that the contentions are well founded. It is the law that a party adjudged in contempt for violation of an order or decree may acquit himself by showing that such order or decree is invalid or a nullity. (*Lester v. People*, 150 Ill. 408, 416; *Leopold v. People*, 140 Ill. 552, 557; *Armour Grain*

*Co. v. Pittsburgh, C., C. & St. L. R. Co.,* 320 Ill. 156, 160.)   The taking of depositions was unknown at common law, and it is a method of securing evidence created by statute.   (*Ward Pump Co. v. Industrial Commission,* 302 Ill. 199, 202.)   And, in the taking of depositions, the statutory provisions must substantially be complied with, and no material departure from the statute can be allowed unless by agreement or waiver of the parties to the suit.   (*Corgan v. Anderson,* 30 Ill. 95, 98.)   In section 24 of our Evidence and Depositions Act, which concerns the taking in a *chancery* suit of the depositions of a witness residing or living within the State (as each respondent was), it is provided. (Cahill's St. 1925, p. 1203, ¶ 24):

"When the testimony of any witness, residing or being within this State, *shall be necessary* in any suit in chancery in this State, the party wishing to use the same may cause the deposition of such witness to be taken before any judge,    *    *    *    *    master in chancery or notary public, without a commission or filing interrogations for such purpose, on giving to the adverse party or his attorney ten days' notice of the time and place of taking the same, and one day in addition thereto (Sundays inclusive) for every fifty miles' travel from the place of holding the court to the place where such deposition is to be taken.   If the party entitled to notice and his attorney resides in the County where the deposition is to be taken, five days' notice shall be sufficient."

Section 25 of the Act, Cahill's St. ch. 51, ¶ 25, provides for the taking of the deposition of a resident witness in a suit *at law,* and section 26, Cahill's St. ch. 51, ¶ 26, provides for the taking of the deposition, in any civil suit *at law or in equity,* of a witness residing within this State but more than 100 miles from the place of holding the court, or not residing in this State. In section 36 of the Act, as amended in 1919, Cahill's

530    APPELLATE COURTS OF ILLINOIS.

People ex rel. Jamontas v. Miller, 245 Ill. App. 524.

St. ch. 51, ¶ 36, provision is made for the compelling by the court of a witness to obey the subpoena of the proper officer and to testify by depositions before such officer.

It will be noticed that, under said section 24, only such testimony shall be taken by depositions as "shall be necessary." Nowhere in complainants' petitions of May 26, 1926, and June 5, 1926, are any facts stated, or elsewhere disclosed, showing that it is *necessary* to take the testimony of respondents by depositions before Master Miner, or that the testimony thus sought to be obtained is pertinent to the issues of said chancery cause. (See *Lester v. People,* 150 Ill. 408, 418.) And the verified answer of respondents states facts showing that the taking of such testimony by depositions is not necessary. Such being the condition of the record, we are of the opinion that the court was not justified, upon respondents' refusal to obey Master Miner's subpoenas and testify before him, in entering its rule of May 26, 1926, or the contempt orders appealed from. Furthermore, it clearly appears that any proper testimony sought to be procured by complainants before Master Miner could have readily been procured before Master Dellenback, before whom the cause stood referred for the taking of testimony and reporting to the court his conclusions thereon. And we do not think that the decision in *Hill v. Thomas B. Jeffery Co.,* 292 Ill. 490, is contrary to these holdings. The facts in that case are different from those in the present case, and, apparently, the question of the necessity for the taking of testimony by depositions was not raised or discussed.

For the reasons stated the contempt order appealed from against Paul Miller, entered June 22, 1926, is reversed, as well as the similar orders entered against respondents, Peter Galskis and Anton Zymont.

*Reversed.*

BARNES, P. J., and WELLS, J., concur.