George Kemeny, Plaintiff-Appellant, v. Walter Skorch, Sr. and Walter Skorch, Jr., Defendants-Appellees.
People of the State of Illinois, Petitioner-Appellee, v. James A. Dooley, Respondent-Appellant.

Gen. No. 47,540.

First District, First Division.

June 15, 1959.

Released for publication July 23, 1959.

James A. Dooley, of Chicago, pro se, appellant.

Vogel & Vogel, of Chicago (Robert C. Vogel, Robert B. Johnstone, of counsel) for appellee.

JUSTICE SCHWARTZ delivered the opinion of the court.

The problem presented by this appeal is whether the defendants' attorney on a pre-trial hearing in a personal injury case should be allowed to have the report of a medical examination made for plaintiff's attorney by an examining physician. An examining physician or medical expert is one who examines a patient not with a view to treating him, but to report his findings to the attorney and ultimately to testify if the case goes to trial. James A. Dooley (hereinafter called respondent), attorney for plaintiff, offered the reports of attending physicians, but refused to submit

the report of the examining physician unless defendants stipulated that it would not be used or referred to by defendants' counsel on the trial of the cause. Defendants' counsel would not agree to that condition. The court ordered respondent to submit the report unconditionally. Respondent refused, and the trial court fined him $50 and costs for contempt. From that finding, respondent has appealed to this court.

On oral argument we were advised by both sides that this is in the nature of a test case to settle an issue now disturbing and delaying the disposition of personal injury matters through the pre-trial conference route.

At the threshold of our consideration of the matter we are met with the argument by defendants that this court has no jurisdiction to pass upon the question on this appeal; that the order of a court having jurisdiction must be obeyed until it is reversed or set aside in a direct proceeding for that purpose; and that in a proceeding for contempt it cannot be urged that the order is invalid as long as the respondent is in contempt thereof.

Where subjection to a contempt citation is a means of testing a pre-trial order, courts have allowed the question to be raised in that way. Carden v. Ensminger, 329 Ill. 612, 161 N. E. 137; Krupp v. Chicago Transit Authority, 8 Ill.2d 37, 132 N.E.2d 532; Hruby v. Chicago Transit Authority, 11 Ill.2d 255, 142 N.E.2d 81; Lester v. People, 150 Ill. 408; Red Star Laboratories Co. v. Pabst, 359 Ill. 451, 194 N. E. 734; People ex rel. Jamontas v. Miller, 245 Ill. App. 524; Hayes v. Chicago Transit Authority, 340 Ill. App. 375, 92 N.E.2d 174. In Carden v. Ensminger, supra, the court said, p. 620:

"If the party against whom the order is made wishes to contest the validity of the order he may refuse to

obey and in a prosecution for contempt show in defense that the court had no authority to make the order."

■ There is a different line of cases where courts have refused to test the validity of an order in a contempt proceeding. Among those have been labor cases such as Ash-Madden-Rae Co. v. International Ladies Garment Workers' Union, 290 Ill. 301, 125 N. E. 260, and O'Brien v. People ex rel. Kellogg Switchboard & Supply Co., 216 Ill. 354, 75 N. E. 108, where contempt resulted from failure to obey an injunction order. It is obvious that if the injunction order were not obeyed, a fait accompli would have resulted regardless of what the Appellate court did. In any event, it is clear that in pre-trial discovery matters such as this, an appeal is allowed from a contempt order.

■ The order in question rests upon the interpretation of Supreme Court Rule 19-5(1) which reads as follows:

"Rule 19-5.(1) Matters Privileged against Discovery.

"All matters which are privileged against disclosure upon the trial are privileged against disclosure through any discovery procedure. Disclosure of memoranda, reports or documents made by or for a party in preparation for trial or any privileged communications between any party or his agent and the attorney for the party shall not be required through any discovery procedure."

This rule makes three classes of documents exempt from disclosure through discovery procedure: (1) those matters privileged against disclosure on trial; (2) memoranda, reports or documents made by or for a party in preparation for trial; and (3) any privileged communications between any party or his agent and the attorney for the party.

Respondent has argued as if a privileged communication were involved; that is, a privileged communication as distinguished from a report made in preparation for trial. There is an important distinction. If the document in question is privileged and we were to so hold, then it would not be available either on discovery proceeding *or on trial,* no matter how material or relevant it would appear to be. On the other hand, if it is a report made in preparation for trial but not privileged, then, although not available in discovery proceedings, it may be available upon trial, if material and relevant. We must therefore select the theory on which we make our decision; otherwise it could be argued that it was the law of this case that the document was privileged.

To support his position, respondent has cited five Illinois cases: Stafford v. Chicago, 14 Ill.App.2d 114, 143 N.E.2d 68; Hayes v. Chicago Transit Authority, 340 Ill. App. 375, 92 N.E.2d 174; People v. White, 8 Ill.App.2d 428, 131 N.E.2d 803; Chapman v. Gulf, M. & O. R. Co., 337 Ill. App. 611, 86 N.E.2d 552; Eizerman v. Behn, 9 Ill.App.2d 263, 132 N.E.2d 788. Before considering these cases, we desire to clarify the confusion created by the exemption from discovery of the so-called "work product" of the lawyer and the term "privilege." If we accept the word "privileged" in its usage in law as a term of art to define communications such as those between husband and wife or attorney and client, which are held to be confidential and not subject to disclosure although relevant to an issue on trial, then a medical report made by a doctor to a lawyer concerning his client's physical condition is not privileged. Unfortunately, the term "privilege" has been made ambiguous by its application to statements taken by a lawyer from witnesses, and embraced in the phrase "work product."

The case from which the theory of privilege for a lawyer's "work product" stems is Hickman v. Taylor, 329 U. S. 495 (1946). The phrase was first used in the opinion of the Court of Appeals (Hickman v. Taylor, 153 F.2d 212). Suit was brought by an administrator for the death of a seaman drowned when a tug capsized. The plaintiff desired statements which the defendant's attorney had taken from members of the crew. The trial court required the attorney to comply and on his refusal, held him in contempt. The Court of Appeals, in passing upon the case, said that the test is not whether the documents would be competent as evidence, since they might contain statements of fact which could be the source of other information which would be admissible, but the court was concerned with the impact of the rules for discovery as they affected the lawyer-client relationship. They said they were clear in their own minds that memoranda of talks with witnesses, signed statements of witnesses, and lawyers' recollections of talks with witnesses are "privileged" within the rule. They said that this is difficult to phrase properly, and then made the effort, as follows, p. 223:

"But here we are dealing with intangible things, the result of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the 'work product of the lawyer' in the argument of the case. This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us."

In passing upon the case, the Supreme court of the United States adopted the phrase "work product," but did so with a sharp, qualifying statement as follows (pp. 511–512):

165

"Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. . . . But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted."

The net effect of the decision in the Hickman case is to exclude from pre-trial discovery statements of lay witnesses taken by a lawyer for one of the parties. Even this limited application is further qualified, for production of such statements might be required under a host of circumstances enumerated in the quotation from the Supreme Court decision. However, the phrase "work product" was alluring and was used in cases where its precise application was unwarranted. Our own court made such use of it. We will consider cases cited by counsel in support of his position.

In Eizerman v. Behn, 9 Ill.App.2d 263, 132 N.E.2d 788, this court used the phrase "work product" in connection with certain notes or memoranda from which the plaintiff's attorney purportedly was reading while cross-examining a witness. This court held that there was no case which would justify calling an at-

torney to the witness stand to testify concerning the contents of such notes made and used by him to cross-examine a witness. The notes were, of course, irrelevant and immaterial, and there was no occasion to invoke any doctrine of privilege. In Chapman v. Gulf, M. & O. R. Co., 337 Ill. App. 611, 86 N.E.2d 552, the document sought to be discovered was a statement given the defendant's claim agent by a witness relating to what the witness had been told by the plaintiff as to events prior to the accident. The court denied discovery on the ground that the evidence would be incompetent as hearsay. The phrase "work product" had no significance in those cases.

In People v. White, 8 Ill.App.2d 428, 131 N.E.2d 803, (copy of witness's statement), and Hayes v. Chicago Transit Authority, 340 Ill. App. 375, 92 N.E.2d 174 (claims investigator's report), discovery was denied because the material was exempt by the rule. It was not exempt as a privileged document, but as a document made in preparation for trial. In Stafford v. Chicago, 14 Ill.App.2d 114, 143 N.E.2d 68, after holding that cross-examination was improper, the court added as dictum that the report of a witness (here, the plaintiff's doctor) was a privileged communication under Rule 19-5(1). Again, the phrase "work product" was without significance. We do not believe that the court intended to make an addition to the highly restricted group of confidential communications, and the opinion gives no indication that such was the intention. The report of the witness was a memorandum prepared for trial and in that respect, it was within the provisions of the rule.

In his reply brief, respondent has called attention to Chicago v. Harrison-Halsted Building Corporation, 11 Ill.2d 431, 143 N.E.2d 40, as authority for the proposition that the reports of experts are privileged. That was a condemnation case brought under the eminent

domain act. Under that act, it is a condition to the exercise of the right of condemnation that the authorities seeking to appropriate the property must make an attempt to agree with the owner before the institution of condemnation proceedings. An offer by the condemnor is therefore compulsory. The defendant sought to obtain information by pre-trial discovery relative to the circumstances surrounding the amount and basis of the offer made by the condemnor and sought to procure the appraisals of two real estate experts. The trial court, relying on Waukegan v. Stanczak, 6 Ill.2d 594, 607, held that the evidence was not admissible. The Supreme court sustained that position and said that the rationale of the Stanczak case "was that offers so made are in the nature of an *attempt to compromise* and cannot be proved." (Italics added.) The Supreme court also said that the appraisals were made for use on trial and "this being true, the evidence was privileged and need not be disclosed either at the time discovery is sought or at the trial." We do not believe that by this they intended to enlarge the area of privileged communications.

In addition to the foregoing Illinois cases, respondent has cited a number of other authorities which we have examined. In Prizio v. Penachio, 19 Conn. Supp. 381, 115 A.2d 340, the court held statements of witnesses not to be privileged, but unobtainable on discovery. State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 257 S.W.2d 69, concerns the attorney-client privilege, as does Martin v. Lingle Refrigeration Co., 260 S.W.2d 562 (Mo.) and the dicta in Eisaman v. Weimer, 126 N.E.2d 92 (Ohio Com. Pl.). Seaboard Air Line R. Co. v. Timmons, 61 So.2d 426 (Fla.) concerns both the attorney-client privilege and a policy-oriented provisional immunity. In the following cases discovery was refused not because the material was privileged, but because it was beyond the scope

168

of the discovery statute or rule of court. Mower v. Mc-Carthy, 112 Utah 1, 245 P.2d 224 (exempting memoranda "in anticipation of litigation or preparation for trial"). In Hallett v. Michigan Consol. Gas Co., 298 Mich. 582, 299 N.W. 723, the court limited the operation of the discovery to "actual facts and conditions" and held confidential the *results* of investigation for confidential use. Other cases cited by respondent merely restate the rule that the matter sought by means of discovery must be pertinent to the course of action. Jacobs v. Jacobs, 50 So.2d 169 (Fla.). Empire Box Corp. of Stroudsburg v. Illinois Cereal Mills, 47 Del. 283, 90 A.2d 672, appears to support respondent's position. Insofar as it holds that such materials are privileged, we consider it to be against the great weight of authority. In no case do we find compelling support for respondent's contention.

██ ██ In the instant case, while the report is not privileged, it was certainly a report made by or for a party in preparation for trial and hence not available on discovery proceedings. The language of the rule is clear and cannot be evaded by a cogent argument against its usefulness. We must therefore hold that the document is not available to defendants on pre-trial proceedings. It may become relevant upon trial and if so, it would not be exempt as a privileged document.

Having decided that the matter is not privileged but is nevertheless immune to pre-trial discovery by virtue of the rule, we ordinarily should regard our judicial function fulfilled. But this is different from the ordinary case. It involves a rule, a regulation of the court's own household. In such a case we deem it appropriate that we should state our views regarding the desirability of the rule. The trial court well stated the matter when he said in making his decision that there should be a distinction between a profes-

sional and a lay witness; that to arrive at a true appraisement of the case and the damages involved, it would be salutary for a professional witness to know when he made a report that he would have to adhere to it on trial unless he wished to face the possibility of impeachment by the use of his report, or had good cause for changing it. The trial court felt that the trend of recent decisions of the Supreme court was in that direction.

An expert medical witness is an important part of the technique of personal injury litigation. He generally is a persuasive, fluent, impressive witness, able to make the jury understand that what he is telling them is the product of years of educational preparation and medical experience, with particular reference to and emphasis on the specialty involved. He will name his colleges and universities, his degrees, the medical societies to which he belongs, the national specialty groups to which he has been admitted, the hospitals in which he has interned or externed, and the hospital staffs on which he has held positions. Having thus made his introduction, he will state his findings upon examination of the plaintiff and, by means of a long hypothetical question devised for that purpose, will relate the cause of the pathological condition to the accident and give his prognosis. That he is being paid by one side is always skillfully lost in casual answers to cross-examining cynical questions, by a modest shrug indicating that a charge is made per hour or day, which seems wholly inconsequent to the large proportions from which his great capacities emerge. Thus is set the basis for the jury's finding on damages.

The fluency of the contemporary doctor is a matter of amazement and perhaps envy to the profession supposed to have a monopoly on the use of language. It was not long ago that the spate of literature—fiction-

al, biographical, scientific and historical—that issued from the pens of wielders of the scalpel and distributors of capsules startled literary critics. One, with a touch of bitterness, ventured to say that to become a successful writer it was necessary to have a medical degree. Even so, little did the non-litigating public know the true rhetorical masterpieces that came from the lips of medical experts on the witness stand and how they, as much as the lawyers, shattered the aerial limits of verdicts in personal injury cases and made hundreds of thousands grow where only thousands grew before.

. We say all this to put in its true perspective the role of this particular type of witness. He is part of the trial apparatus of a personal injury case. As such, every possible step should be taken to channel his contributions in a direction that will serve the ends of justice. One such step is to make his reports as nonpartisan, objective and scientific as are the other notable activities of his profession. To that end, we believe the rule should be revised, but while it stands we have no choice but to interpret it fairly.

Judgment reversed.

McCORMICK, P. J. and DEMPSEY, J., concur.