(No. 59196.—

SHIRLEY SEARS, Appellee, v. JULIE RUTISHAUSER, Appellant.

*Opinion filed June 29, 1984.*

404

Costigan & Wollrab, of Bloomington (Robert W. Neirynck, of counsel), for appellant.

Jerome Mirza & Associates, Ltd., of Bloomington (David V. Dorris, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

This appeal requires us to determine whether a trial judge should have allowed defense counsel to cross-examine plaintiff's expert witness concerning the number and frequency of referrals the expert had received from plaintiff's attorney. Plaintiff, Shirley Sears, filed suit on August 9, 1977, for personal injuries suffered in an auto crash with the defendant, Julie Rutishauser. The case was tried before a jury in McLean County, and plaintiff received a verdict of $40,000. A divided appellate court affirmed the judgment of the trial court (117 Ill. App. 3d 61), and we granted defendant's petition for leave to appeal (87 Ill. 2d R. 315(a)). We now reverse the judgments of the circuit and the appellate courts.

Sears allegedly suffered personal injuries when she was involved in an automobile accident with Rutishauser at approximately 8:15 a.m. on February 13, 1977. Sears was examined at Brokaw Hospital in Normal immediately after the accident, but she was not hospitalized, and returned home. Sears experienced neck pain the fol-

lowing day, and she began visiting the family doctor, Dr. Rieber Hovde, on a regular basis. Dr. Hovde ordered diathermy, medication, and a neck brace, but Sears continued to experience neck pain and stiffness on the right side of her body.

During the next three years, Sears was referred to Dr. John Wright, an orthopedic surgeon in Bloomington, Dr. Leonard Strichman, a neurosurgeon, and Dr. Hugh McMenamin, a physical therapy expert in Peoria. These doctors continued to prescribe conservative treatment such as traction, ice, and physical therapy. Sears continued to experience pain, and she consulted an attorney. The plaintiff's attorney referred the plaintiff to Dr. Donald Rumer, an orthopedic surgeon in Champaign. Dr. Rumer prescribed Phenlybutazone and Prednisone to alleviate the inflammation in Sears' neck. Dr. Rumer's treatments did not alleviate Sears' discomfort. She testified that she could not raise her right arm or hand above her head, and that her right arm and hand felt as if they were asleep. She continued to experience neck pain at the time of the trial.

At trial, Dr. Hovde testified that Sears' injuries were minor, and that her discomfort may have been caused by an arthritic condition that predated the automobile accident. Dr. Rumer's testimony directly contradicted the testimony of Dr. Hovde. Dr. Rumer testified that Sears' injuries were very serious, and that they were caused by the auto accident. Dr. Rumer also testified that Sears was afflicted with thoracic outlet syndrome, which caused the pain and loss of feeling in her arm.

When Dr. Rumer was deposed before trial, he stated that he had received two or three referrals a month from the plaintiff's attorney for the previous four years. Dr. Rumer was very reluctant to disclose this information. He originally stated that he did not know how many patients he had received from the plaintiff's attor-

ney, and then admitted that he knew but would not reveal it. Finally, he estimated that he was treating between 20 and 40 patients that had been referred to him by the plaintiff's attorney. At a pretrial hearing on a motion *in limine*, defense counsel stated that he wanted to impeach Dr. Rumer by cross-examining him on the number and frequency of these referrals. The trial judge, however, ruled that defense counsel could only ask whether Dr. Rumer had received other patient referrals from the plaintiff's attorney. On appeal, the defendant contests this limitation to one question concerning Dr. Rumer's possible bias or financial interest in the litigation.

The modern personal injury trial often becomes a battle between expert witnesses. This is particularly true in a case such as the one before this court. The severity of a soft-tissue or "whiplash" injury is beyond the knowledge of the average person, and a jury must ordinarily rely on the testimony of experts in reaching a verdict. In *Kemeny v. Skorch* (1959), 22 Ill. App. 2d 160, our appellate court noted:

> "An expert medical witness is an important part of the technique of personal injury litigation. He generally is a persuasive, fluent, impressive witness, able to make the jury understand that what he is telling them is the product of years of educational preparation and medical experience, with particular reference to and emphasis on the specialty involved. He will name his colleges and universities, his degrees, the medical societies to which he belongs, the national specialty groups to which he has been admitted, the hospitals in which he has interned or externed, and the hospital staffs on which he has held positions. \*\*\* That he is being paid by one side is always skillfully lost in casual answers to cross-examining cynical questions, by a modest shrug indicating that a charge is made per hour or day, which seems wholly inconsequent to the large proportions from which his great capacities

emerge. Thus is set the basis for the jury's finding on damages.

*** [L]ittle did the non-litigating public know the true rhetorical masterpieces that came from the lips of medical experts on the witness stand and how they, as much as the lawyers, shattered the aerial limits of verdicts in personal injury cases and made hundreds of thousands grow where only thousands grew before." 22 Ill. App. 2d 160, 170-71.

It is virtually impossible to prosecute an expert witness for perjury. As this court noted in *Opp v. Pryor* (1920), 294 Ill. 538:

"[T]he expert is often the hired partisan and his opinion is a response to a pecuniary stimulus. The opinion has the sanction of an oath but lacks the substantial safeguard of truth applied to testimony concerning facts observed by a witness which is afforded by the criminal law since the opinion is the result of reasoning, and no one can be prosecuted for defective mental processes. The field of medicine is not an exact science, and the expert being immune from penalties for perjury, his opinion is too often the natural and expected result of his employment." 294 Ill. 538, 545-46.

The principal safeguard against errant expert testimony is cross-examination. Generally, opposing counsel may probe bias, partisanship or financial interest of an expert witness on cross-examination. In *Chicago City Ry. Co. v. Handy* (1904), 208 Ill. 81, this court stated:

"It is competent to show that a witness *** is in the employ of one of the litigants regularly or frequently as an expert witness, or to prove facts and circumstances which would naturally create a bias in the mind of the witness for or against the cause of either of the litigants." 208 Ill. 81, 83.

Thorough cross-examination of medical doctors must be tempered with protection of the doctor-patient privilege, and subtrials on issues remote from the subject of the lawsuit should be avoided. Limitation of cross-examination of a

medical expert rests within the sound discretion of the trial judge. (*McMahon v. Chicago City Ry. Co.* (1909), 239 Ill. 334, 341.) A medical expert can be questioned about fee arrangements, prior testimony for the same party, and financial interest in the outcome of the case. *Allen B. Wrisley Co. v. Burke* (1903), 203 Ill. 250; Graham, *Impeaching the Professional Expert Witness by a Showing of Financial Interest*, 53 Ind. L.J. 35, 42-45 (1977).

Prior Illinois decisions have not clearly delineated the permissible bounds of cross-examination of medical experts. In *Chicago City Ry. Co. v. Smith* (1907), 226 Ill. 178, the trial judge sustained an objection to a question that implied the expert was employed to "hunt up claims." The court reasoned that medical experts could be cross-examined concerning motives and feelings, but not about cases having no relation to the litigation. (226 Ill. 178, 187.) References to prior testimony for the same party must be controlled by the trial judge. In *Plambeck v. Chicago Railways Co.* (1920), 294 Ill. 302, the defense counsel made the following statement to the jury:

> "I want to say a word about Dr. Tinney, with his six-foot stature and his handsome Adonis form, testifying in behalf of the street car company. He didn't undertake to say he testified one hundred times, more or less, in the last year. Where there comes a conflict between a man like that and Dr. Loeser,—a plain old family doctor,—his business is to cure sickness. Tinney's business,—a large part of it,—is to testify to defeat the claims of the injured. Where it comes to these two men on a scientific proposition, which are you going to give credence to?" 294 Ill. 302, 306-07.

The *Plambeck* court ruled that such vitriol was of a "very cheap sort" but that it did not cause reversible error. (294 Ill. 302, 307.) Interest, bias, or financial interest in the litigation can be used to impeach the credibility of a medical expert.

The Illinois decision with the greatest factual similarity to the case at bar is *Davis v. Gulf, Mobile & Ohio R.R. Co.* (1971), 130 Ill. App. 2d 988. In *Davis*, the court ruled that the trial judge did not abuse his discretion when he allowed plaintiff's medical expert to be cross-examined concerning prior referrals from plaintiff's attorney. *Davis* was revised on denial of rehearing, and the final version, reported at 272 N.E.2d 240, modifies the court's original position on the cross-examination of plaintiff's medical expert. The revised *Davis* held that it was error, but not reversible error, for the trial judge to allow cross-examination concerning prior referrals from plaintiff's attorney. (272 N.E.2d 240, 245.) The *Davis* court relied on *Chicago City Ry. Co. v. Smith* (1907), 226 Ill. 178, in reaching this conclusion.

We believe the appellate court misinterpreted *Chicago City Ry.* when it modified *Davis* on denial of rehearing. As noted earlier in this opinion, *Chicago City Ry.* prohibited a line of cross-examination on cases that had no connection with the case at bar. *Chicago City Ry.* dealt with impeachment concerning the doctor's alleged "hunting" for cases on a contingent fee basis. (226 Ill. 178, 187.) It did not address the propriety of cross-examination concerning referrals of patients to a friendly medical expert. The original *Davis*, at 130 Ill. App. 2d 988, represents the correct application of Illinois law.

In the case at bar, we believe that the trial judge should have allowed the defense attorney to cross-examine Dr. Rumer concerning the number of referrals he had received from plaintiff's attorney. The jury was presented with conflicting medical testimony concerning the severity of plaintiff Sears' injuries. Each trial involves a search for the truth, and we believe that this search is facilitated by the opportunity to weigh the credibility of each witness. See generally *Wilson v. Clark* (1981), 84 Ill. 2d 186.

Plaintiff's counsel thoroughly cross-examined Dr. Hovde, an expert witness for the defendant and plaintiff's

family doctor. Plaintiff's counsel impugned Dr. Hovde's credibility by demonstrating that Dr. Hovde was 70 years old, was not board-certified as an orthopedic surgeon, and was not familiar with some specialized terminology used by plaintiff's attorney. Dr. Hovde was so thoroughly humiliated by this cross-examination that plaintiff's counsel took the unusual step of apologizing to the jury during his closing statement for his treatment of Dr. Hovde.

We contrast this latitude in cross-examination with that afforded defense counsel. When defense counsel cross-examined Dr. Rumer, the only medical expert for the plaintiff, he was permitted to ask one question concerning "other referrals" from the plaintiff's attorney. Dr. Rumer testified he had received referrals from the plaintiff's attorney "and others." A single question in a sea of complex medical testimony could certainly not have the same impact as the exhaustive impeachment of Dr. Hovde. Dr. Rumer's professional credentials were impeccable, and a demonstration of bias or financial interest was the most promising avenue for defense counsel to pursue.

Dr. Hovde testified that Sears' injuries were not serious and may have been psychologically induced. Dr. Rumer testified that Sears' case was one of the most serious he had ever seen. The credibility of these witnesses, and the weight accorded their testimony, was critical to the resolution of the case. We believe both sides should have been allowed great latitude in impeaching the other side's expert.

We are not suggesting that there was anything improper in the relationship between the plaintiff's attorney and Dr. Rumer. It is entirely possible that Dr. Rumer was scrupulously honest in his testimony. It is also possible that he contoured his testimony to assure a steady stream of lucrative referrals in the future. We believe the jury is in the best position to make this decision, but an informed decision is impossible if defense counsel is not allowed to probe this subject on cross-examination.

Plaintiff's contention that Dr. Rumer's testimony is inherently reliable is without merit. Although the Medical Practice Act (Ill. Rev. Stat. 1981, ch. 111, par. 4433) provides for sanctions against a doctor who wilfully makes false statements, we do not believe that the legislature intended this statute to be a substitute for effective cross-examination.

Although this question has not been squarely addressed by this court, a majority of jurisdictions that have considered this issue have ruled that a medical expert may be cross-examined concerning the number and frequency of referrals from an attorney. (*Ager v. Baltimore Transit Co.* (1957), 213 Md. 414, 132 A.2d 469; *Lammert v. Wells* (1929), 321 Mo. 952, 13 S.W.2d 547; see also *Barrios v. Davis* (Tex. Civ. App. 1967), 415 S.W.2d 714; *Wilson v. Stilwill* (1981), 411 Mich. 587, 309 N.W.2d 898.) We believe such cross-examination should be permitted in this State.

Such cross-examination should be strictly limited to the number of referrals, their frequency, and the financial benefit derived from them. Defense counsel originally wanted to subpoena Dr. Rumer's patient records, but such a step would violate the doctor-patient privilege, and this motion was properly denied by the trial judge. The trial judge must exercise his or her discretion to protect the doctor-patient privilege and to prevent undue consumption of time.

In light of our holding, we need not address the other issue raised in this appeal. We therefore conclude that the trial judge abused his discretion when he refused to allow defense counsel to cross-examine Dr. Rumer concerning the number and frequency of patient referrals from the plaintiff's attorney. We reverse the judgments of the circuit and appellate courts and remand the cause for a new trial.

*Reversed and remanded.*