The Bank of Wadley sued Ronald E. Drewes as guarantor of a note for money lent to Dot Development Company, Inc. The issue at trial was whether Drewes signed in his representative capacity as President of Dot Development or in his individual capacity. Drewes appeals from a $30,000.00 jury verdict in favor of the bank. We affirm.
The note in question was for $51,537.39. Drewes signed it in his representative capacity as President of Dot Development Co., Inc. The guaranty payment clause on the reverse side of the note was signed by Drewes, "Ronald E. Drewes, Pres." This note was a renewal of three previous notes. Note 1, for $25,041.50, was signed by Drewes as an individual and as president. He also signed the guaranty clause individually. Drewes admits this. The guaranty clause of Notes 2 and 3, for $15,125.00 and $10,083.33, respectively, were signed, "Ronald E. Drewes, Pres." The collateral for Note 1 was a "list of equipment per attached sheet;" Note 2, "advance on a contract which is attached;" and Note 3 listed the assignments of a contract attached to the note. The collateral for the renewal note was a "list of equipment attached."
Appellant sought through discovery, but was refused on grounds of irrelevance, a random sampling of notes executed to the Bank of Wadley by closely held corporations. His purpose was to establish custom, policy, or habit, and "[a]lso to see if it was the bank's policy to have all closely held corporations sign in a corporate capacity, not only as maker, but as a guarantor of payment, and if Mr. Phillips was seeking to trick Mr. Drewes in individually signing as guarantor of payment." Appellant signed the note in the presence of Mr. Wyner Phillips, Vice-President of the Bank. Mr. Phillips was subsequently convicted of embezzlement.
The day of trial the court excused Mr. Phillips on the written suggestion of Phillips' psychiatrist. Mr. Phillips' deposition was read to the jury.
The pre-trial order narrowed the issue to whether Drewes had signed the guarantor provision in the note in his individual capacity or his representative capacity as President of Dot Development Company, Inc. The issue of damages was specifically resolved in the pre-trial order. In part, that order provides as follows:
"4. Stipulations and Admission.
 "(a) Plaintiff admits that he has received $20,607.05 as a result of the disposition of the collateral offered by DOT DEVELOPMENT, INC. and plaintiff has in his possession a trailing machine and brick saw. Plaintiff and defendant both agree that should plaintiff recover a judgment against defendant that defendant will only have to pay the amount owed after all collateral has been sold and all applicable credits have been applied . . ."
This order was binding on the issues triable by the parties. Rule 16, Alabama Rules of Civil Procedure. Thus, Drewes cannot complain on appeal that the court improperly instructed the jury on the issue of damages or that the evidence does not support the damage verdict. Moreover, there was no objection to the court's oral charge.
Drewes alleges that the trial court abused its discretion by denying him inspection of the Bank of Wadley's books to determine its policy, habit, or custom regarding guaranteeing loans to closely held corporations. *Page 404 
The scope of discovery is governed by Rule 26. In part, Rule 26 (b)(1) provides as follows:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
The rule makes it plain that discovery is not limited to matters competent as evidence at trial. "Relevancy," as used in our discovery rules, means relevant to the subject matter of the action and there is a reasonable possibility that the information sought will lead to other evidence that will be admissible. 8 Wright and Miller, Federal Practice and Procedure, § 2008.
The broad scope given our discovery rules necessarily requires that the trial court be vested with considerable discretion in ruling on such matters. This especially applies to cases where, such as this case, there is a claim that the information sought is irrelevant.[1] The trial court is in the best position to judge such a matter and this court will not reverse the trial court unless under all the circumstances there has been an abuse of discretion. Campbell v. RegalTypewriter Co., Inc., 341 So.2d 120 (Ala., 1976). The federal courts' longer experience with such discovery rules has likewise lead them to bestow broad discretion in the trial court on such matters as relevancy. Swanner v. United States,406 F.2d 716 (5th Cir., 1969); In re Surety Association ofAmerica, 388 F.2d 412 (2nd Cir., 1967).
We cannot say that the trial court abused its discretion by denying Drewes the opportunity to inspect the Bank's books to ascertain its policy, habit, or customs in regard to loans to closely held corporations. Assuming that a custom was found it would not be admissible. McKinney v. Darden, 192 Ala. 369,68 So. 269 (1915); Singleton v. Thomas, 73 Ala. 205 (1882). Further, there is no indication that the inspection would have led to other admissible evidence.
Drewes also claims that the trial court erred in admitting into evidence the deposition of Wyner Phillips, Vice-President of the Bank, when Drewes obtained the loan in question for Dot Development Co. As noted earlier, the trial court excused Mr. Phillips from appearing in court on the basis of a letter from his psychiatrist. Drewes maintains that the appellees failed to demonstrate Phillips was sufficiently ill under Rule 32 (a)(3) to allow the use of his deposition. We disagree. The medical excuse was sufficient and the deposition was properly admitted. It was the opinion of the physician that if Mr. Phillips appeared in court it would be "extremely detrimental to his continued recovery." It is not necessary that a person be on his deathbed to be "ill" within the meaning of that term under Rule 32 (a)(3). Cunningham v. Lowery, 45 Ala. App. 700,236 So.2d 709 (1970).
Lastly, Drewes claims that the trial court erred in admitting his personal financial statement into evidence. Drewes claims the financial statement was introduced solely to show that he was a person of sufficient means and able to pay the judgment.
As stated earlier, the only issue at trial was whether Drewes signed the guarantor provision of the note in his individual capacity or his representative capacity as President of Dot Development Company.
The Bank argues that it would be useless to require Drewes to sign both the note and the guaranty clause in his representative capacity, for obvious reasons. In this regard, the Bank adduced evidence showing that it required Drewes to submit a personal financial statement in connection with the loans to Dot Development Company. It was for the purpose of showing the capacity in which Drewes signed the guaranty clause, the Bank argues, that it introduced Drewes' financial statement. *Page 405 
It is not uncommon for banks to require a personal financial statement when an individual signs as a guarantor. The fact that the Bank of Wadley did or did not require a personal financial statement would tend to establish the fact of capacity. The trial court did not abuse its discretion in admitting Drewes' financial statement. Bradley v. Jones,282 Ala. 331, 211 So.2d 465 (1968).
The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, JONES and EMBRY, JJ., concur.
[1] A study by the Project for Effective Justice found that a frequent and serious complaint lawyers have about discovery is that the opposition attempts to get information not relevant to the case. Glaser, Pretrial Discovery and the Adversary System, 1968.