Appeal by plaintiff from summary judgment in favor of defendants in an action based on fraud. We affirm.
On November 15, 1980, Mrs. Freddie Ann McDow was driving a 1979 Chevrolet van on a narrow, unpaved road in Tuscaloosa County. She was accompanied by her sister, Nova Story. The van was owned by Mrs. McDow's husband, Michael A. McDow. According to Mrs. McDow, as she approached an automobile parked on the right side of the road, she began to pass it to the left. As she did this, the occupant of the car, William L. Hutchins, opened the left door of the car, scraping the van and a mural painted thereon on its right side.
The McDows carried $50.00 deductible collision insurance coverage on the van with State Farm Mutual Automobile Insurance Company (State Farm). Shortly after the accident, Mrs. McDow reported it to their insurance agent and signed an "Automobile Claim Report" containing her version of the accident. Several days later, Mrs. McDow took the van to the State Farm claim center where it was examined and photographed by a company estimator. He prepared an estimate of the repair cost in the amount of $201.00, leaving open the damage to the mural, and gave a copy of his estimate to Mrs. McDow. Mrs. McDow took the van to three different garages and obtained estimates *Page 822 
on the total damages. One of the garages was Dixie Datsun in Bessemer, which estimated the total cost of repairs at $441.00. Dixie Datsun later supplemented this estimate covering repairs not previously covered by the State Farm estimator, and specifically including $110.00 allocated to the damaged mural. A field claims specialist for State Farm then inspected the van, following which he approved this estimate. Dixie Datsun agreed to perform the repairs for that figure. When the work was completed, State Farm paid Dixie Datsun $391.00, and the McDows paid $50.00, representing their deductible amount. The McDows also executed a subrogation receipt.
Thereafter State Farm elected to pursue subrogation against Hutchins. According to the affidavit of David Holley, an assistant claims superintendent:
 "I was in charge of State Farm's file in this matter at the Five Points Claim Center. I felt in good faith that the claim against Hutchins had merit and that he was liable for the property damage to the van in negligently opening a car door into the path of the insured van as it proceeded around Hutchins's parked car."
On January 29, 1981, at Mr. Holley's direction, State Farm mailed a subrogation notice form to Hutchins, requesting information about his liability insurance coverage, if any, giving the amount paid by the company and the deductible amount, and inviting a reply. Hutchins received this notice but did not respond. A second subrogation notice was also received by Hutchins without reply from Hutchins or his attorney, whereupon State Farm referred the file to the law firm of Williams and Elliott in Birmingham for collection.
On April 16, 1981, the law firm acknowledged receipt of the file, and Charles C. Elliott of that firm had a demand letter prepared and mailed to Hutchins. Hutchins received this letter also but made no reply. Elliott subsequently returned the file to State Farm without further action. The file was then sent to the State Farm claims center in Tuscaloosa, which mailed it to William J. Donald, III, of the law firm of Zeanah, Donald and Hust, requesting that the subrogation claim be pursued. The McDows were notified by mail of this action and that collection would be made in their names.
On June 1, 1981, Donald mailed a demand letter to Hutchins who, after receipt, elected not to respond. On July 22, State Farm mailed Donald a check for the filing fee for an action, and thereafter proceeded to record a statement from Mrs. McDow which was sent to Donald. On August 20, 1981, he filed an action on behalf of McDow and State Farm against Hutchins in the Tuscaloosa County small claims court to recover $441.00. Hutchins answered and also counterclaimed against the plaintiffs for $408.07. That case was tried on November 17, 1981, resulting in a judgment for Hutchins on the plaintiff's complaint and a judgment against him on his counterclaim. Neither side appealed that decision.
Hutchins filed this present action in circuit court on June 9, 1982. He named as defendants State Farm, Dixie Datsun, Charles C. Elliott, William J. Donald, III, Freddie Ann and Michael McDow, and Nova Story. As Hutchins expresses the theory of his complaint: "The underlying elements of FRAUD, upon which the case is based, might well be called `The All-American Collision Insurance Scam.'" In his complaint, Hutchins alleged that the door to his automobile was already open before Mrs. McDow arrived, and that Mrs. McDow nevertheless drove the van's right front bumper against the open driver's door of his car. He then alleged that the McDows and Story presented a fraudulent claim to State Farm; that in a conspiracy with them State Farm failed to investigate the accident; that State Farm conspired to send the van to Dixie Datsun without soliciting competitive estimates; that Dixie Datsun conspired with State Farm and the McDows to inflate the repair bill; and that State Farm, the McDows, Story and Dixie Datsun conspired to file the district court lawsuit. Hutchins alleged further that the McDows and Story knew their representations to State Farm *Page 823 
were false and would be detrimental to him; that the McDows and Story knew that Dixie Datsun had fraudulently inflated its repair bill; that the McDows and Story, in conspiracy with Elliott, fraudulently threatened Hutchins with a lawsuit if he failed to comply with their demands; that they likewise conspired with Donald for the same purpose; and that the McDows, Story, State Farm and Donald filed and prosecuted a fraudulent claim against him knowing that it was false.
Hutchins also alleged that State Farm committed a number of frauds upon him by: failing to "carry out its duties as insurer to investigate" the accident; lying to plaintiff by stating to him that it had performed an investigation and that its investigation revealed his responsibility for the accident; failing "to carry out its duty as an insurer to determine" that the repair bill it paid was the result of competitive bidding; failing "to determine the accuracy of the repair bill" before using it as the basis for a subrogation action; continuing "its frauds . . . by sequentially conspiring with two Alabama lawyers, who in turn compounded Defendant STATE FARM'S frauds with their own"; continuing "its fraud all the way to the courthouse, prosecuting a legal claim against Plaintiff HUTCHINS which was based to a great extent upon its individual and conspiratorial fraudulent statements and activities"; and acting when "it knew or should have known that Plaintiff HUTCHINS was disabled, old, and poor, and thus probably unable to protect himself."
Hutchins charged Dixie Datsun with fraud in that it "knew, and recklessly disregarded the fact, that it had presented a fraudulently-inflated repair bill to . . . STATE FARM, and that it had lied [to State Farm] about its costs in repairing the van," and that as an expert it knew that someone would have to pay State Farm for the repair bill. He further alleged fraud by Dixie Datsun because it "knew, or should have known, that its fraudulently-inflated repair bill would cause Defendant STATE FARM to force plaintiff HUTCHINS to defend himself against a false billing, and yet Defendant DIXIE DATSUN recklessly disregarded its duty to present a fair repair bill."
Attorney Elliott was charged by plaintiff with fraud in that when he sent his "fraudulent [collection] letter" to Hutchins he knew he had not performed an investigation of the accident, and moreover, that he fraudulently stated that the results of his "non-existent investigation revealed that Plaintiff HUTCHINS was guilty of negligence." Hutchins made essentially the same allegations against the defendant attorney Donald. He demanded compensatory damages of $975.99 and punitive damages.
Responsive pleadings and motions were filed by the defendants. Hutchins propounded interrogatories to all defendants. The defendants in due course filed motions for summary judgments, supported by numerous affidavits, together with a copy of the court file of the district court case of McDow and State Farm against Hutchins. The affidavits filed by defendants were those of Freddie McDow; Michael A. McDow; Don Salter, the field claims specialist of State Farm; David Holley, assistant claims superintendent for State Farm; William J. Donald, III; Charles C. Elliott; John C. Ratliff, the estimator for State Farm; and Ronald C. Lonergan, State Farm's Tuscaloosa claims superintendent. The defendants also filed objections and a motion for a protective order in response to the propounded interrogatories to which certain answers were also filed. Hutchins responded with his motion to strike the objections and the motion for a protective order. He also filed his own affidavit in opposition to the motions for summary judgment.
A hearing on all motions was held on August 23, 1982, and on September 3, 1982, the trial court entered summary judgment for all defendants. Hutchins moved to vacate summary judgment, supporting this motion with an affidavit of his attorney. A hearing was held on October 20 at which the defendants, except Dixie Datsun, submitted *Page 824 
the affidavit of Fred W. Nicol who, as the trial judge, had conducted the hearing on the motion for summary judgment but who had since retired. The motion to vacate was denied and this appeal ensued.
Plaintiff has raised a number of issues on appeal. Our study of the briefs and record, however, has led us to conclude that the controlling issue before us is whether or not it was error to grant summary judgment in favor of all defendants. In discussing that issue we note that the defendants affirmatively pleaded the statute of limitations as a defense to plaintiff's claims against them. The record supports the conclusion that such a defense was good in this case. However, because of the nature of plaintiff's allegations of "fraud," it is our belief that we should comment upon other reasons upholding summary judgment.
Actionable fraud in Alabama consists of (1) a false representation, (2) concerning a material existing fact; (3) the plaintiff must rely upon that false representation; and (4) plaintiff must be damaged as a proximate result. InternationalResorts, Inc. v. Lambert, 350 So.2d 391 (Ala. 1977). Under these elements it is fundamental that the representee who has relied on the defendant's alleged misstatements and the plaintiff who was injured must be one and the same. Ray v.Montgomery, 399 So.2d 230 (Ala. 1980); Jordan Sons v.Pickett, 78 Ala. 331 (1884). Under these requirements we must inquire whether there was any evidence before the trial judge of a misrepresentation to plaintiff Hutchins. We have not found any evidence that either of the McDows, or Nova Story, or Dixie Datsun, or State Farm misrepresented anything to Hutchins. The McDows and Story made statements concerning the cause of the accident and the extent of the damage, but these statements were to State Farm, not to Hutchins. Based on these statements, State Farm sought subrogation for cost of repairs from Hutchins. The standard notice form was sent to Hutchins on two occasions inquiring as to his liability insurance coverage. This notice began: "We are writing you about the accident in which you were involved with our insured on the date shown above. Our investigation of this accident indicates that you are responsible for this accident." In our view this language is merely the opinion of State Farm and in no way constitutes the misrepresentation claimed by plaintiff. Dixie Datsun made statements to State Farm regarding the cost of repairs. For aught that appears, Dixie Datsun had no contact with Hutchins whatsoever.
Plaintiff, moreover, has adduced no evidence even indicating that he relied upon any representations by any of the defendants. See Desroches v. Complete Auto Transit, Inc.,409 So.2d 417 (Ala. 1981). Indeed, Hutchins's position throughout has been that the cause of the accident and the damage to the McDow van was the negligence of Mrs. McDow, not any negligence of his own. His fraud claim is based also on the premise that the McDow van was not damaged to the extent represented by the McDows to State Farm. Thereafter, he alleged, State Farm, Elliott and Donald falsely represented to him that he was liable to State Farm for $441.00, the amount of the loss. But Hutchins did nothing. He ignored the demand letters. He never relied upon them (assuming arguendo that they were misrepresentations) but, indeed, even contested them when the small claims action was initiated. Certainly, Hutchins adduced no evidence affording an inference that he was either deceived, or induced to act to his detriment, in reliance upon any such representations. Earnest v. Pritchett-Moore, Inc.,401 So.2d 752 (Ala. 1981).
Nor did plaintiff adduce any evidence that he was damaged. In his affidavit in opposition to defendants' motion for summary judgment, he does state: "All I know is that the Defendants tried to cheat me, and I believe they should pay back what they took from me." But he produced nothing to show that he had been deceived to his damage. In his complaint he claimed $975.00 for "out-of-pocket expenses he has had to pay to defend himself." But at the summary judgment hearing he offered nothing to show that he had in fact incurred *Page 825 
any expense or any other loss as a result of the claimed fraud.Amason v. First State Bank of Lineville, 369 So.2d 547 (Ala. 1979).
Perusal of the materials before the trial judge at the summary judgment hearing is revealing. The only factual disagreement between the parties revealed therein pertains to the events of the day of the accident. The defendants' accounts by affidavits of what took place thereafter are uncontradicted. Without facts suggesting contrary inferences, they establish an ordinary sequence of events: a claim for collision insurance proceeds following a vehicular accident, a damage survey, procurement of reasonable estimates of repair, payment of the claim, and legitimate attempts at collection from the apparent tortfeasor, including an action in small claims court. Nothing was presented furnishing a scintilla of evidence that any of the defendants, singly or in concert with any of the others, either conspired to defraud[1] or defrauded plaintiff. Plaintiff may have suspected fraud, but when the defendants by affidavits showed the absence of any genuine issue of fact as to his fraud claims, it was incumbent upon him to come forward with at least a scintilla of evidence creating a triable issue of fact. Rule 56 (e), A.R.Civ.P. The failure of the opposing party to offer evidence contradicting that of the moving party leaves the trial court with no alternative but to consider that evidence uncontroverted, with no genuine issue of material fact existing. Worley v. Worley, 388 So.2d 502 (Ala. 1980).
Plaintiff contends that summary judgment was inappropriate for other reasons. He says that the trial court erroneously considered certain papers filed by defendants after their motions for summary judgment had been filed. Plaintiff also maintains that the trial court erred in granting a protective order to the defendants which allowed them to avoid answering certain of his interrogatories. We surmise that the latter contention is based upon plaintiff's viewpoint that summary judgment was premature; that the defendants' answers would have revealed material evidence establishing a genuine issue of fact. On this second point, we note that plaintiff propounded eighty-seven interrogatories, most of these containing multiple parts. Many were answered. To others the defendants filed timely objections to which the protective order was addressed. Examples of these interrogatories follow: all residence addresses since 1975; complete employment history since 1970; all instances of employment history for periods of time exceeding two consecutive weeks and reasons for unemployment since 1975; all instances of self-employment and gross and net income therefrom since 1975; complete marital history including prior spouses, divorces, children by prior marriages; complete job, marital and family status of all brothers and sisters living; complete history and account of all business, commercial, social, professional or fraternal organizations, clubs or societies to which defendants belong, including membership dates, offices and positions held, and reasons for leaving organization; each motor vehicle owned by defendants since 1975; full and complete history and account of educational background, including subjects and courses taken, diplomas, degrees or awards received and identification of persons who could substantiate or verify such information; full history and account of defendants' armed services backgrounds; detailed information regarding federal and state tax returns since 1977; identification of defendants' accountants or attorneys for past three years, including description of subject matter handled by such attorney and disposition of the subject matter.
We have examined the propounded interrogatories, the answers filed, and the objections made. We are cognizant of our rule that "[p]arties may obtain discovery regarding any matter, not *Page 826 
privileged, which is relevant to the subject matter involved in the pending action," and we note that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26 (b)(1), A.R.Civ.P. Our decisions, and federal decisions based on the corresponding federal rule, have vested considerable discretion in trial courts in the application of this discovery rule, especially when the objection of relevancy is raised. The ultimate question is whether the trial court abused its discretion. Ex Parte Guerdon Industries, Inc.,373 So.2d 322 (Ala. 1979); Drewes v. Bank of Wadley, 350 So.2d 402
(Ala. 1977). Considering the nature of plaintiff's action, we cannot conclude that the trial court abused that discretion. Nor do we perceive in the trial court's action granting the protective order any limitation upon the plaintiff's opportunity to himself introduce evidence of facts precluding summary judgment. Indeed, the record affirmatively shows that at the summary judgment hearing the trial court specifically inquired of plaintiff's counsel whether he had anything further to offer in support of plaintiff's claim, and no additional offer of proof was forthcoming, nor any indication made of additional discovery of a pertinent nature. We conclude that the trial court did not err in granting the protective order.
Hutchins's other contention is that the trial court improperly considered certain documents submitted after themotion for summary judgment was filed. A synopsis of the pertinent filings shows the following:
1982
June 30 Hutchins filed interrogatories.
 July 2 Defendants (except Dixie Datsun) filed motion for judgment on pleadings and answers to complaint.
 July 20 Dixie Datsun filed motion for judgment on pleadings.
 July 29 Defendants (except Dixie Datsun) filed motions for summary judgment.
 August 6 Hutchins filed motion to defer hearing on defendants' motions for summary judgment until after defendants filed amended answers and answers to interrogatories.
 August 10 Trial court set date for hearing all motions — August 23, 1982.
 August 17 Hutchins filed motion for postponement of hearing on defendants' motions for summary judgment and affidavit in opposition to defendants' summary judgment motions.
 August 20 Dixie Datsun filed motion for summary judgment with affidavit of Glenn Majors.
 August 23 All defendants except Dixie Datsun filed respective answers to plaintiff's interrogatories prior to hearing.
 Hearing on all pending motions. Trial court took all motions under advisement.
 September 3 Final order granting summary judgment entered by trial court.
It should be observed that, in accord with the plaintiff's request of August 6, the hearing on the summary judgment motions was not held until the defendants had filed their answers to the complaint and to the interrogatories. It does appear that the hearing on Dixie Datsun's motion for summary judgment was held less than ten days after the filing of the motion, i.e., on August 23, 1982, after filing on August 20, and thus was not in conformity with the requirement of Rule 56 (c), A.R.Civ.P. Plaintiff made no objection to this procedure, however, nor did he make any objection when the trial court, following the hearing, announced: "Without objection, the Court advised the parties it would consider all pending motions and take them under advisement." Not only does it appear that plaintiff waived strict adherence to the time requirement of Rule 56 (c), but in view of the fact that he had nothing to offer contravening any of the summary judgment motions, as shown above, he was not prejudiced by the hearing of Dixie Datsun's motion for summary judgment. Additionally, it is apparent that *Page 827 
the trial court could have elected and did elect to treat the defendants' motions for judgment on the pleadings, filed on July 2 well in advance of the August 23 hearing, as motions for summary judgment. It is also shown by the record that the plaintiff was allowed ample opportunity to present evidentiary matter in opposition to those motions, and chose not to do so.
Hence, the trial court did not err in its consideration of documents on motion for summary judgment. Nor was any error committed by the court below in considering documents after they were filed. Under Rule 56 (c), A.R.Civ.P., the trial court was authorized to consider the "pleadings, depositions, answers to interrogatories . . . on file."
For the reasons discussed above, we have concluded that the trial court did not err in granting summary judgment for all defendants. Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Hutchins does not rely upon the theory of conspiracy, but upon what he describes as a "web of fraud."