530 So.2d 785 (1988)
Ex parte Florence J. MORRIS.
(Re Florence J. MORRIS v. Dr. Robert Q. CRADDOCK, et al.)
87-279.
Supreme Court of Alabama.
July 22, 1988.
*786 Gregory B. Breedlove of Cunningham, Bounds, Yance, Crowder, and Brown, Mobile, for petitioner.
Edgar M. Elliott, III and Karon O. Bowdre of Rives & Peterson, Birmingham, for respondents.
Michael A. Worel and Jeffrey C. Kirby of Emond & Vines, Birmingham, for amicus curiae Alabama Trial Lawyers Assn.
MADDOX, Justice.
By her petition for a writ of mandamus, plaintiff Florence J. Morris asks this Court to order Circuit Judge Ingram Beasley to vacate his order compelling her expert witnesses to produce their income tax records and other information regarding their sources of income.
The relevant facts are as follows: Morris filed a medical malpractice action, alleging that the respondents negligently conducted a cervical laminectomy which left her permanently disabled. Petitioner retained two expert witnesses; both were deposed by defense counsel. Thereafter, this action was set for trial on one occasion, but was continued. Subsequently, the action was set for trial on November 16, 1987. On October 16, 1987, respondents filed a "motion to compel information from plaintiff's experts." Specifically, respondents sought to obtain the expert witnesses' "federal and state income taxes for the years 1978 through the present date." Petitioner, in response, filed a written objection in which she sought to prevent production of the income tax records; she also requested a protective order pursuant to Rule 26(c), Ala.R.Civ.P.
Judge Beasley ordered the production of the income tax records and denied petitioner's subsequent motion for reconsideration.
Insofar as we can determine, the issue of whether an expert witness's income tax records are "privileged" is a question of first impression in this State.
Rule 26, Alabama Rules of Civil Procedure provides:
"(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
"(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
"* * *
"(4) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

*787 "(B) A party may discover facts known or opinions held by an expert who has been retained, specially employed or assigned by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
"* * *
"(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...."
In view of the fact that the Alabama Rules of Civil Procedure are patterned after, and are strikingly similar to, the Federal Rules of Civil Procedure, "a presumption arises that cases construing the Federal Rules are authority for construction of the Alabama Rules." Assured Investors Life Ins. Co. v. National Union Associates, Inc., 362 So.2d 228 (Ala.1978).
It is well recognized that the courts have liberally construed the rules on discovery so as to provide both parties with relevant information fundamental to proper litigation on all the facts. Ex parte Old Mountain Properties, Inc., 415 So.2d 1048 (Ala. 1982). The Supreme Court synopsized the liberal standard in an often-quoted passage from the leading case of Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947):
"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of `fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."
This liberality has its limits, however, and Rule 26(c), supra, grants the trial court the power to control the use of the process and to preclude its abuse by any party. Old Mountain Properties, supra. One court expanded the Hickman Court's metaphor to castigate a party who made unreasonable discovery requests of his opponent's expert witness, in stating:
"[I]nstead of using rod and reel, or even a reasonably sized net, [the requesting party] would drain the pond and collect the fish from the bottom. This exercise goes beyond the bounds set by the discovery rules."
In Re: IBM Peripheral EDP Devices Antitrust Litigation, 77 F.R.D. 39, 42 (N.D.Cal. 1977).
In the instant case, petitioner argues, in essence, that the trial court's order, a month before the date set for trial, requiring non-party expert witnesses to produce all of their personal income tax records since 1978 exceeds the scope of discovery. Petitioner points out that respondents took the depositions of both expert witnesses and had ample opportunities to delve into any subject matters concerning the case and that the respondents have at their disposal relevant information concerning both expert witnesses with respect to their hourly rates for testifying in cases, the number and names of states in which they have testified as experts, the number of depositions given as experts, and the approximate percentage of income received from medical-legal cases.
Respondents, on the other hand, take the position that they are entitled to all financial information and that the expert witnesses' bias is a legitimate issue in this case that can be revealed only by "access to the tax returns and financial documents to verify or contradict their testimony."
The Supreme Court has stated in dictum that tax records and related documents "in the hands of the taxpayer" are not absolutely privileged. St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). In ruling on discovery *788 motions, however, the lower federal courts, "due to the sensitive information contained therein and the public interest to encourage the filing by taxpayers of complete and accurate returns," have fashioned a qualified privilege imposing high standards of relevancy before parties will be ordered to reveal such records. Mitsui & Co. v. Puerto Rico Water Resources Authority, 79 F.R.D. 72, 80 (1978). Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc., 96 F.R.D. 147 (E.D.Va.1982). See also "Discovery of Federal Income Tax Returns and the New `Qualified' Privileges," 5 Duke L.J. 938 (1984).
Furthermore, in Tele-Radio Systems LTD. v. De Forest Electronics, Inc., 92 F.R.D. 371, 375 (D.N.J.1981), the court held:
"Unless `clearly required in the interests of justice, litigants ought not to be required to submit such returns as the price for bringing or defending a lawsuit.' Where, as here, the information sought is otherwise available, and defendants have not made their income an issue in the case, the income tax returns are not properly discoverable."
See also, Wiesenburger v. W.E. Hutton & Co., 35 F.R.D. 556 (S.D.N.Y.1964). (Citations omitted.)
Similar reasoning was used by the court in DeMasi v. Weiss, 669 F.2d 114 (3d Cir. 1982), wherein a physician brought an antitrust action after his application for hospital staff privileges had been denied. The court addressed the issue of whether 97 nonparty witnesses, as well as 10 defendants, should be ordered to disclose their gross incomes derived from their medical practices. Plaintiff sought the information so that his expert witnesses could compare and contrast the income of physicians with staff privileges as opposed to physicians without staff privileges, and, from this comparison, estimate damages. The court observed, speaking through Judge Aldisert:
"It can scarcely be denied that the public exposure of one's wallet or purse is, in the abstract, an invasion of privacy. Nor can it be denied that private individuals have legitimate expectations of privacy regarding the precise amount of their incomes. Unless placed in issue, as in litigation, in a loan application, or when a federal statute or regulation may require publication of annual compensation, for instance, individuals employed in the private sector expect that the amount of their income need be divulged only to the taxing authorities, and to them with an expectation of confidentiality."
It is true, as the respondents argue, that other courts have allowed discovery of income tax records of a party to the litigation; however, as the following cases indicate, the courts were extremely cautious in requiring production of these records.
In Shaver v. Yacht Outward Bound, 71 F.R.D. 561 (N.D.Ill 1976), the plaintiff's husband had been killed while a guest aboard a yacht, and she sought the owner's federal income tax records to ascertain whether the expenses of maintaining the yacht were claimed as business deductions. In ordering the production of the tax records, the court held that the party resisting discovery cannot claim a privilege if his records would "cast significant light" on issues he raised. Although the court ordered the defendant to produce the requested tax records for plaintiff's inspection, the court stated that such disclosure should not be routinely required and wrote:
"[F]ederal courts have been cautious in ordering the disclosure of tax returns insisting, at the very least, that it reasonably appear they are relevant and material to the matters in issue.... In most instances, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily obtainable."
Shaver at 564 (citations omitted).
This Court affirmed a trial court's order to produce tax returns in the case of Constantine v. Constantine, 274 Ala. 374, 149 So.2d 262 (1963), a divorce case in which the former wife attempted to modify a divorce judgment because her former husband's income and net worth had increased since the divorce. The former husband denied *789 the allegation that his income had greatly increased, thereby placing "the question of his income in issue." In fact, the former husband's income was the single issue in the case. But this Court recognized the need for privacy of such returns, stating:
"This is not to be taken as approval of indiscriminate exposure of the contents of such returns when production of copies is required. Courts may and should make proper protective orders governing the use of and access to the contents of such returns."
274 Ala. at 378-79, 149 So.2d at 266-67. See also, Smith v. Bader, 83 F.R.D. 437 (S.D.N.Y.1979).
This general federal policy circumscribing disclosure of one's income tax records was aptly summarized by Judge Sirica as follows:
"Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled."
Payne v. Howard, 75 F.R.D. 465, 469 (D.D. C.1977).
After weighing the liberal policy of the discovery rules against the emerging qualified privilege disfavoring disclosure of one's income tax records, we hold that petitioner's expert witnesses are not required to produce their income tax records.
The incremental value that such information would provide respondent for purposes of showing bias is substantially outweighed by the prejudice that would be imposed on a person not a party to the proceedings, and involving an issue that is not controlling. In essence, to require a non-party witness to produce all of his income tax records for nine years preceding trial would clearly be more prejudicial than probative.
We are not, however, unmindful that such records would be discoverable in appropriate circumstances.
"If this were a case where the taxpayer had made an issue of his income [as in Constantine, supra], there would be no question that he had waived the confidentiality of his returns and had thereby opened them up to scrutiny by his opponent. Unless a litigant himself makes an issue of his income, his income tax returns are not subject to discovery."
Federal Savings & Loan Insurance Corp. v. Krueger, 55 F.R.D. 512, 514 (N.D.Ill. 1972); see also, Kingsley v. Delaware, L. & W. R.R., 20 F.R.D. 156 (S.D. New York 1957); and Heathman v. United States District Court for the Central District of California, 503 F.2d 1032, 1035-37 (9th Cir.1974) (Chambers, J., dissenting).
Our holding in this case is not unlike our holding in Otwell v. Bryant, 497 So.2d 111 (Ala.1986), in which this Court held that the fact that one of the defendant's expert witnesses was covered by the same liability insurer as the defendant did not show such a connection as to allow its use to impeach the credibility of the witness when to do so would be to inject the issue of insurance into the case.
The writ of mandamus is therefore due to be granted, and the trial court is hereby ordered to vacate the order compelling plaintiff's expert witnesses to produce their personal financial records and income tax returns for nine years preceding the date of trial.
WRIT GRANTED.
JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
BEATTY, J., dissents.
BEATTY, Justice (dissenting).
Sure, junk the usual standard of review applicable to this case and fashion a new rule on discovery. After all, this professional witness does not wish to run the risk of being impeached for bias, so he wishes to protect his income tax returns from discovery. The majority extends him this *790 unique protection by the extreme of limiting discovery of his income tax returns, which just might show that he is more expert witness than practitioner of his profession. The result is that the proponent can still receive the benefit of the witness's testimony without running the risk of having his bias revealed. What a convenient and one-sided little arrangement. And all this time I have been laboring under the impression that all bias is material! See generally C. Gamble, McElroy's Alabama Evidence § 149, et seq. (3d ed.1977).
A clear statement and explanation of the standard of review in this type case was set forth by this Court in Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102-03 (Ala. 1981), quoted recently in Ex parte Johnson, 485 So.2d 1098, 1106-07 (Ala.1986):
"The utilization of a writ of mandamus to compel or prohibit discovery is restricted because of the discretionary nature of a discovery order. The right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful. Lassiter v. Werneth, 275 Ala. 555, 156 So.2d 647 (1963).
"As the court stated in Campbell v. Regal Typewriter Co., Inc., 341 So.2d 120 (Ala.1976):
"`The Alabama Rules of Civil Procedure permit very broad discovery and the rules must be broadly and liberally construed. Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 310 So.2d 210 (1975). However, Rule 26(c) recognizes that the right of discovery is not unlimited and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process....

"For this reason, mandamus will issue to compel discovery only in those cases where a clear abuse of discretion is shown. Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702 (1967).
"...
"It is the trial court's job to exercise its broad discretion in a manner that will implement this philosophy of full disclosure of relevant information and at the same time afford a party, or others, maximum protection against harmful side effects which would result from unnecessary disclosure. [Marshall v. Guerdon Industries, Inc.,] 373 So.2d 322 (Ala. 1979).
"... `Relevancy,' as used in our discovery rules, means relevant to the subject matter of the action and a reasonable possibility that the information sought will lead to other evidence that will be admissible. Drewes v. Bank of Wadley, 350 So.2d 402 (Ala.1977); 8 Wright and Miller, Federal Practice and Procedure § 2008 (1970)." (Emphasis added.)
Petitioner does not dispute that it is entirely proper to impeach a witness on cross-examination by showing his or her bias or interest in the case. Indeed, bias is a material issue in any case. In Collins v. Wayne Corp., 621 F.2d 777, 784 (5th Cir. 1980), the Court of Appeals recognized the relevance of showing the extent to which an adverse witness has testified in past cases:
"Impeachment of witnesses through a showing of bias or interest aids the jury in its difficult task of determining facts when it is faced with contradictory assertions by witnesses on both sides of the case. See, generally McCormick on Evidence § 33 (1972). A pecuniary interest in the outcome of a case may, of course, bias a witness. Id. A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases." (Emphasis added.)
In Trower v. Jones, 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988), the Supreme Court of Illinois held that the trial court did not abuse its discretion in permitting defense counsel to cross-examine plaintiffs' expert witness as to (1) his annual *791 income from service as an expert witness, and (2) the frequency with which his testimony is given in favor of plaintiffs rather than defendants in medical malpractice cases. In so holding, that court recognized and explained the relevancy of such impeachment evidence. Because of its excellent reasoning and analysis, I quote at length from that court's opinion:
"Adding to the importance of effective cross-examination is the proliferation of expert `locator' services which, as a practical matter, can help the litigants of either side of most any case find an expert who will help advocate the desired position. As this case helps illustrate, many experts today spend so much of their time testifying throughout the country that they might be deemed not only experts in their field but also experts in the art of being a persuasive witness and in the art of handling cross-examination. As was stated in Kemeny v. Skorch (1959), 22 Ill.App.2d 160, 159 N.E.2d 489, little has the nonlitigating public (including the jury) realized `the true rhetorical masterpieces that come from the lips of medical experts.' 22 Ill.App.2d at 171, 159 N.E.2d 489.
"The combined effect of both the greater latitude given expert witnesses during direct examination and the expertise of many expert witnesses as expert witnesses is aptly set forth by Professor Michael H. Graham as follows:
"`In combating testimony of the expert witness, opposing counsel must rely upon his skill in probing at weaknesses in the basis and reasoning of the witness whether or not disclosed upon direct, without letting the witness reinforce his direct testimony in the process. He must do this with an expert witness more familiar with the subject matter. Of course, counsel also has available the use of learned treatises to assist him in fencing with the witness. Unfortunately, fencing with the witness is the impression the cross-examination of an expert witness often leaves with the jury, an impression trial counsel would prefer to avoid. The difficulty in conducting a successful destructive cross-examination is compounded by the growing number of experts whose livelihood is dependent in large part upon the litigation process. Such experts with their vast amount of litigation experience become exceptionally proficient in the art of expert witness advocacy.' Graham, Impeaching the Professional Expert Witness by Showing of Financial Interest, 53 Ind.L.J. 35, 40 (1977).
"We have long recognized that the principal safeguard against errant expert testimony is the opportunity of opposing counsel to cross-examine, which includes the opportunity to probe bias, partisanship or financial interest. (Sears v. Rutishauser (1984), 102 Ill.2d 402, 407, 80 Ill.Dec. 758, 466 N.E.2d 210; Chicago City Ry. Co. v. Handy, (1904), 208 Ill. 81, 69 N.E. 917.) The considerations discussed above further illuminate the ever-increasing importance of bringing to the jury's attention facts by which the jury may reasonably discount the credibility of an expert's testimony.
"It is with this recognition of the important role of cross-examination that we view plaintiffs' arguments. We first focus on their arguments regarding inquiry into the expert's annual income from serving as an expert witness. Plaintiffs argue that evidence of an expert's financial interest in the case should be limited to the remuneration received for testifying (1) in a particular case, (2) for a particular party, or (3) for a particular party's attorney. They point to cases in which we have allowed such inquiries (see, e.g., Sears v. Rutishauser (1984), 102 Ill.2d 402, 80 Ill. Dec. 758, 466 N.E.2d 210; Chicago City Ry Co. v. Handy, (1904), 208 Ill. 81, 69 N.E. 917), and argue that such cases prescribe the limits of such a line of inquiry. They contend that an extension of these cases would bring before the jury information which is of only minimal probative value and which is confusing and highly inflammatory. Defendant responds that this case is analogous to Sears. He contends that no pertinent distinction can be drawn between allowing an expert to be cross-examined *792 regarding other employment by an attorney for a party (as was allowed in Sears) and allowing an expert to testify regarding other employment by the witness referral service through which he became involved in the instant case.
"We believe that the questions regarding Dr. Martins' income which are at issue here were permissible, and we do not base our conclusion on the strict analogy to the facts in Sears suggested by defendant. Rather, we reach our decision based on an appreciation of the fact that the financial advantage which accrues to an expert witness in a particular case can extend beyond the remuneration he receives for testifying in that case. A favorable verdict may well help him establish a `track record' which, to a professional witness, can be all-important in determining not only the frequency with which he is asked to testify but also the price which he can demand for such testimony. We find pertinent the following commentary from a recent annotation:
"`That an expert in a particular field may be in effect a "professional witness" in lawsuits rather than being more or less exclusively a practitioner whose employment in a lawsuit as a witness is merely incidental to his or her profession, is a matter which is likely to bear on the credibility of that expert, since a significant portion of the expert's livelihood may thus depend on his or her desirability as a favorable and convincing witness, thus possibly leading to a temptation for the witness to color findings and testimony to suit the needs of the proponent party, rather than to evaluate and present the subject matter of the testimony with complete impartiality.' (39 A.L.R.4th 742, 746 (1985).)
"We thus find that it was proper to inquire how much Dr. Martins was earning annually from services relating to rendering expert testimony, and we find no impropriety in inquiring into such income for the two years immediately preceding trial."
(Emphasis added.) 520 N.E.2d at 299-300. The Illinois Supreme Court went on to hold, among other things, that the frequency with which an expert testifies for plaintiffs, as opposed to defendants, is relevant in determining the bias of that witness:
"We also find that the circuit court properly permitted counsel to inquire, on cross-examination, as to the frequency with which Dr. Martins testifies for plaintiffs. Such information clearly has some relevance in determining whether an expert witness is biased or his opinion skewed. Attorneys, judges and many trial experts themselves are well aware that certain expert witnesses appear particularly willing to testify that medical negligence has occurred, while others appear particularly inclined to testify that there was no deviation from the appropriate standard of care. Obviously, the fact that a physician testifies only for one category does not necessarily mean that his testimony is not credible. For example, a physician may adopt a policy of testifying only on behalf of other physicians in order to avoid the resentment among his colleagues which could arise from testifying on behalf of individuals suing physicians. This would not mean that he testifies on behalf of doctors who he believes were actually negligent, but only that (for personal reasons) he prefers not to testify for plaintiffs regardless of the merits of their case. A reasonable jury can be expected to recognize the possibility that the expert witness has just such a legitimate concern, and the counsel presenting the witness may even wish to point out such a possibility to the jury. Nevertheless, information as to whether a particular expert routinely testifies for a particular category of party is certainly of some value in determining whether he may have a predisposition either to exculpate or find fault. There is no sufficient reason why this information cannot be weighed and evaluated by the jury along with all of the other evidence pertaining to the credibility of an expert witness."

(Emphasis added.) 520 N.E.2d at 301.
As respondents correctly point out, the issue in this case is not the admissibility *793 of the plaintiff's expert's tax returns; rather, at issue is their discoverability. Because inquiry into the extent to which an expert has testified in past cases, and the compensation he or she has received for testifying, is proper cross-examination relevant to the issue of bias, it is within the trial court's discretion to rule that expert's tax returns to be discoverable. Chief District Judge O'Conner of the United States District Court for the District of Kansas reached the same conclusion in Baxter v. Navistar International Corp., [No. 85-2293, D.Kan., unpublished, May 18, 1987], a case directly on point and quoted in pertinent part below:
"This is a products liability action in which the plaintiff has designated Mr. Sevart as its expert witness. Sevart is an engineer who admittedly has a prosperous business performing services as an expert witness. Defendant contends that Sevart testifies as an expert witness against manufacturers as a full-time occupation. As a consequence, defendant argues that Sevart has a financial interest in preserving his occupation and that defendant is entitled to the requested tax information for impeachment purposes. Defendant therefore contends that the tax returns in question are discoverable under Federal Rule of Civil Procedure 26 and that the magistrate's order compelling production thereof was proper.
"It is well established that an order of the United States magistrate must stand unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); DeVore & Sons, Inc. v. Aurora Pacific Cattle Co., 560 F.Supp. 236, 239 (D.Kan.1983); Rule 36(IV)(1) of the Rules of Practice of the United States District Court for the District of Kansas. Applying this standard to the facts of this case, the court finds that the magistrate's order requiring Sevart to produce the tax returns must be affirmed.

"There is no question that a party has the right to cross-examine an expert witness about fees earned in prior cases. See Collins v. Wayne Corporation, 621 F.2d 777, 783 (5th Cir.1980). Defendant seeks to use the requested tax returns to cross-examine Sevart about the expert witness fees he has earned in previous cases. The Honorable Patrick J. Kelly has ruled in a similar case involving Mr. Sevart that the income tax returns of Mr. Sevart and Advance Technology, Inc., were discoverable. See Townley v. Vermeer Manufacturing Co., No. 81-1262 (D. Kan., unpublished, June 30, 1983). Although Judge Kelly's order dealt only with the returns of Mr. Sevart and his company, the court finds that it is also reasonable to compel production of Mrs. Sevart's returns, since she works for her husband and Advance Technology.
"Plaintiff has failed to demonstrate that the magistrate's ruling requiring production of the requested tax returns is clearly erroneous or contrary to law. Plaintiff's objection to the magistrate's order of April 2, 1987, is therefore denied." (Emphasis added.)
The majority's focus on what it deems to be "the emerging qualified privilege disfavoring disclosure of one's income tax returns" fails to take into account the concomitant power of the trial court under Rule 26(c), A.R.Civ.P., "to fashion an order with respect to the discovery sought that will `protect a party ... from ... undue burden ...' by specifying `terms and conditions' under which the discovery sought may be had." Ex parte Johnson, supra, 485 So.2d at 1110. Respondent aptly points out that petitioner did not seek a protective order limiting the scope or use of the requested discovery. Instead, petitioner sought protection "from having to respond in any way to said requested discovery." (Emphasis added.) However, if the trial court, in exercising its discretion, was of the same view as the majority, that "requir[ing] a non-party witness to produce all of his income tax returns for nine years preceding trial would be ... prejudicial," the trial court could fashion an order limiting the discovery to a period of years that, in its view based on the testimony given in support of such an order, would not be overly burdensome or prejudicial. Similarly, *794 the trial court could limit the defendants' use of the information contained in the returns to only that which is relevant to the scope of the defendant's inquiry concerning the witness's bias. That information would include only the amount and/or percentage of the witness's annual income for the requested period that was derived from services as an expert witness, as well as to whom those services were rendered, assuming the latter is contained within the witness's tax returns.
Clearly, under the broad and liberal construction that our rules of discovery are to be given, when the "burden" of producing otherwise discoverable information can be lessened by fashioning a protective limiting order, that should be the remedy affordednot a total prohibition on the discovery sought. Accordingly, I must dissent.